DC 2013.CCL.7739-A

| | | |
|---|---|---|
| MAGIC VALLEY CONCRETE, RIO VALLEY PIPE, UPPER VALLEY MATERIALS, ALL VALLEY TRUCKING, MAGIC VALLEY MANAGEMENT SERVICE, jointly d/b/a "CAPA", AND RUFINO GARZA AND RAMIRO J. FLORES, INDIVIDUALLY PLAINTIFFS | § § § § § § § § § | IN THE DISTRICT COURT |
| V. | § § | 107 JUDICIAL DISTRICT |
| UNION PACIFIC RAILROAD CO., DEFENDANT | § § § | CAMERON COUNTY, TEXAS |



FILED 3:45 O'CLOCK P.M.
AURORA DE LA GARZA, CLERK
NOV 26 2013
DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

## PLAINTIFFS' ORIGINAL PETITION, REQUEST FOR DECLARATORY RELIEF, AND REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Plaintiffs, MAGIC VALLEY CONCRETE, RIO VALLEY PIPE, UPPER VALLEY MATERIALS, ALL VALLEY TRUCKING, MAGIC VALLEY MANAGEMENT SERVICE jointly d/b/a CAPA, and co-owners individually, RUFINO GARZA and RAMIRO J. FLORES, hereinafter collectively referred to as ("Plaintiffs"), complaining of Defendant, UNION PACIFIC RAILROAD COMPANY, herein referred to as ("Union Pacific"), and as a cause of action would respectfully plead and show the following:

### I. DISCOVERY LEVEL

1. Discovery in this case is intended to be conducted under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

1

## II. PARTIES

2. This suit is brought by the Plaintiffs, Magic Valley Concrete, Rio Valley Pipe, Upper Valley Materials, All Valley Trucking, Magic Valley Management Service jointly d/b/a CAPA, and co-owners Rufino Garza and Ramiro J. Flores individually, which are Rio Grande Valley owned and operated businesses that own real property in Cameron County, Texas. Plaintiffs contend they own, or otherwise, has a legal right of way access across a private at-grade railroad crossing, DOT #432662, hereinafter referred to as "the railroad crossing", that is the subject matter of this suit.

3. Union Pacific is a foreign corporation with its principal place of business in Delaware. Union Pacific owns the railroad tracks blocking Plaintiff's only access to it's property in Cameron County, Texas and may be served with process by serving Union Pacific's registered agent CT Corporation System at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

## III. JURISDICTION AND VENUE

4. This Court has original jurisdiction over this suit as it involves a property dispute regarding the ownership and legal rights to a private at-grade railroad crossing located on Plaintiffs' property in Cameron, County. It has been repeatedly determined by both state and federal courts that an action brought by a property owner seeking to enjoin a railroad from removing private railroad crossings is neither expressly nor impliedly preempted by the federal Interstate Commerce Commission Termination Act ("ICCTA") and/or the Surface Transportation Board ("STB"). *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, at 415 (5th Cir. 2010). Moreover, the courts have declined to accept railroads' argument that railroad crossings are encompassed in the ICCTA's definition of "transportation", which could result in federal

2

preemption. *Id.* at 409; see also *Island Park, LLC v. CSX Transp., Inc.*, 559 F.3d 96, 99 and 103 (2nd Cir. 2009) ((held, that a state court action involving whether a private railroad crossing used to transport farm equipment should be closed was not preempted...we cannot conclude that all state action related to a railroad crossing is preempted)). Furthermore, the center of this property dispute is not preempted by any federal statute, rather there is no-preemption in "areas of law traditionally reserved to the states, like police powers and property law..." *Davis v. Davis*, 170 F.3d 475, 481 (5th Cir. 1999) (en banc). There is a strong presumption against federal preemption in railroad crossing cases. *New Orleans & Gulf Coast Ry. Co. v. Barrios*, 533 F.3d 321 (5th Cir. 2008). It has been repeatedly found that the no-preemption presumption applies "with full force to generally applicable state property law, even if applied to permit a private, at-grade railroad crossing." *Id.* at 334.

     5.    Therefore, for a state court action to be expressly preempted under the ICCTA, it must seek to regulate the operations of a rail transportation. Resolving typical disputes regarding rail crossings is not in the nature of regulation governed by the exclusive jurisdiction of the STB. This suit is governed by Texas property laws and rules of civil procedure that have nothing to do with regulating railroad transportation. For a state court action to be expressly preempted under the ICCTA, it must seek to regulate the operations of rail transportation and Plaintiffs' actions invoke only Texas state property laws and is thus not expressly preempted.

     6.    Pursuant to the Texas Civil Practices and Remedies Code section 15.002(a), venue is proper in Cameron County, Texas because all of the events giving rise to the claims that form the basis of this lawsuit occurred and surround the rights to the railroad crossing giving access to Plaintiff's property located in Cameron County, Texas.

## IV. NATURE OF THE CASE

7. Plaintiffs, Rufino Garza and Ramiro Flores co-own an enclosed commercial property where they and the other Plaintiffs herein mix and otherwise manufacture concrete, asphalt and other aggregates and then distribute materials and finished products to their customers. Their *only access* to any public road is an existing private at grade railroad crossing that Plaintiffs' and its agents have exclusively used for at least 15 years. This railroad crossing is not used by the public. Without access to the existing railroad crossing, the Plaintiffs would be wrongfully *landlocked* by Union Pacific's railroad tracks. Plaintiffs contend they own the private railroad crossing, have a written easement, or in the alternative, have legal rights to its use by easement by implication pursuant to Texas law.

8. This suit is filed because Union Pacific has made and continues to make threats to wrongfully, and without legal authority, "remove" the Plaintiffs' private at-grade crossing on **December 1, 2013.** If Union Pacific acts on it's removal threats, immediate, imminent, and irreparable harm to Plaintiffs and their customers will occur that cannot be monetarily quantified.

9. This suit is brought to declare Plaintiffs' rights to cross Union Pacific's railroad to access the Plaintiffs' property in Cameron, County. In addition, this suit is brought to enjoin Union Pacific from removing, closing, destroying, or in anyway denying Plaintiffs and their agents from their rightful use of the crossing.

10. Plaintiffs bring this suit under the Uniform Declaratory Judgment Act, Section 37.001 *et seq.* of the Texas Civil Practices and Remedies Code, and make request for temporary and permanent injunctive relief under Section and 65 of the Texas Civil Practice and Remedies

4

Code, and other law. By this suit, Plaintiffs challenge Union Pacific's legality and authority to "remove" the crossing which is the subject matter of this suit.

11. Plaintiffs were given very little notice of Union Pacific's definitive removal intention and thus brings this suit requesting a Temporary Restraining Order as well as Injunctive and Declaratory relief.

## V. FACTUAL BACKGROUND

12. On or about June 10, 1992, twenty-one (21) years ago, Plaintiffs Rufino Garza and Ramiro J. Flores, as co-owners of Magic Valley Concrete, Inc., purchased from L.M.B. Corporation a 14.998 acre tract of land in Cameron County, Texas.

13. At the time of the purchase, the railroad crossing that is the subject matter of this suit, was *already in place* and *was the only ingress and egress* access to the property and was a compelling necessity inducing the purchase by the Plaintiffs.

14. On or about September 19, 2013, Plaintiffs had a face to face meeting regarding the crossing. It was Plaintiffs' understanding that the purpose of the meeting was to discuss an accident that occurred at the crossing a couple of years prior, which had been resolved by settlement. Plaintiffs attended the meeting unaccompanied by counsel.

15. At this meeting, Union Pacific, through its representative, discussed it's intention to remove the private crossing. In response, Plaintiffs offered numerous other mutually beneficial alternatives, including improvements to the crossing if necessary. At the conclusion of the meeting, it was left open-ended and no final arrangement or decisions were announced.

16. On or about October 30, 2013, Union Pacific mailed a written unequivocal

5

announcement of it's unilaterally decision to "remove" the crossing on December 1, 2013. Interestingly, Union Pacific has never communicated who built the original crossing, to whom the crossing was originally conveyed to; rather, they merely stated that Plaintiffs had not produced a document expressly granting them an easement to cross.

17. In addition, Union Pacific, determined, without a legal or factual basis, that Plaintiffs did not have an easement right (whether express or implied) over their railroad tracks, and therefore decided, without further inquiry, to "remove" the crossing.

*Plaintiffs have an expressed easement or implied easement right to the crossing*

18. On information and belief, Plaintiffs believe they have a written legal easement which entitles them to cross Defendant's rail road tracks.

19. In addition, Plaintiffs have provided expert testimony through the Affidavit of Saul Munoz, P.E., which establishes that improvements can be made to the rail road crossing which will make said crossing safe and Plaintiffs have offered to make the necessary improvements to alleviate any concerns that the Defendant may have regarding the safety of the rail road crossing in question.

20. In the alternative, Plaintiffs' right to cross the tracks come from easements implied by law. The Plaintiffs are entitled to an easement by necessity because the crossing is *the only ingress and egress* providing access to the Plaintiffs' property. Without the railroad crossing, *the Plaintiffs are landlocked.* (See Exhibit Ariel Photo 1-4). Plaintiffs' property is surrounded by brush and trees. Id. Therefore, Plaintiffs' use of the the crossing is not merely a matter of connivence, but rather a necessity thereby giving Plaintiffs an implied easement by

necessity.

21.  Plaintiffs' use of the crossing is private, with only it's employees and agents using it, meaning it is not subject to high traffic use by the public, and does not interfere with Union Pacific's use.

22.  Plaintiffs' use of the crossing has been open, notorious, adverse, exclusive, and continuous, and no communication has been received from Union Pacific granting permission or "allowing" Plaintiffs the use of the crossing for more than 15 years. Therefore, Plaintiffs' are entitled to a prescriptive easement, otherwise known as adverse possession easement.

23.  *Time is of the essence; December 1, 2013, is only days away* and Plaintiffs strongly contend they have a written easement, and or, an easement by implication. Plaintiff have filed a request for Temporary Restraining Order in conjunction with this pleading because Plaintiffs will be irreparably harmed if immediate relief is not granted by this court pending a hearing on Plaintiffs' motion for a temporary injunction.

## VI. CAUSES OF ACTION

24.  Plaintiffs seek declaratory relief under the Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code section 37.001 and 65, *et seq.*, declaring that they are legal easement holders with the right to use the crossing in order to access the Plaintiffs' property. In the alternative, Plaintiffs seek declaratory relief requiring Union Pacific to grant to Plaintiffs passage over the crossing under conditions determined by this Court. Plaintiffs also seek a Temporary Restraining Order.

## VII. APPLICATION FOR TEMPORARY & PERMANENT INJUNCTION

25. All of the facts and allegation set out above are hereby incorporated by reference herein. Plaintiffs seek and are entitled to temporary injunctive relief during the pendency of this suit to enjoin Union Pacific from removing, destroying, blocking or in anyway denying Plaintiffs and their agents access to the crossing, and to preserve the status quo.

26. Plaintiffs have plead causes of action for declaratory judgment, temporary, and permanent injunctive relief, and have a probable right to the relief requested upon final hearing of this case. Specifically, Plaintiffs' contend they have a legal written easement granting them access of the crossing the subject matter of this suit, or in the alternative, they have the right to cross pursuant to easements by implication.

27. Plaintiffs have a probable right to recovery following a trial on the merits on these causes of actions which will likely result in an injunction barring Union Pacific from removing or in anyway interfering with the Plaintiffs' use of the crossing.

28. The Plaintiffs, their employees and agents, and numerous other local businesses and persons who rely on the Plaintiffs' timely production and distribution of their products will be irreparably and substantially harmed if Union Pacific is not enjoined from acting on its wrongful removal of the railroad crossing. All of the following harm is imminent and immediate if Union Pacific is not enjoined from removing the crossing:

   a. Plaintiffs' will be forced to breach past, present, and future contracts;

   b. Plaintiffs' and their customers' harm cannot be quantified but will be significant and it is foreseeable that they will be in danger of breaching

8

their contracts with other customers, as well suffering other losses;

c. Plaintiffs will lose a facility that produces approximately $11,640,906 in income;

d. Plaintiffs will lose the value of the land without the crossing;

e. Plaintiffs will lose business opportunity to retain and/or gain customers in the Cameron and Willacy Counties because many projects require cement to be poured within an hour of being loaded;

f. Plaintiffs will suffer the loss of credibility and business reputation if they are not allowed to meet their contractual obligations;

g. Plaintiffs will lose the use of equipment and materials currently at the plant site without the timely opportunity to breakdown and move what can be transported off the property.

29. Many of the above damages clearly are irreparable and cannot be adequately compensated in damages nor measured by any certain pecuniary standard. Without this Court's immediate intervention via a Temporary Injunction, Plaintiffs will have no other adequate legal remedy to timely stop Union Pacific's illegal removal of the crossing. There is simply *no time* for alternative legal remedies. Union Pacific has unequivocally declared its intent to remove the crossing on December 1, 2013.

30. Informal negotiations have failed, much to Plaintiffs' bewilderment despite numerous attempts to cooperate with Union Pacific short of removing the crossing. A Temporary Injunction is the only legal vehicle left to protect Plaintiffs' rights.

31. Plaintiffs are willing to post bond, should any be deemed necessary and appropriate.

32. Plaintiffs request that Union Pacific be temporarily restrained immediately, without hearing, and, after notice and hearing, be permanently enjoined, pending the further order of this Court, from:

  1. Removing, closing, blocking, destroying, or in anyway or form interfere with Plaintiff's ability to ingress and egress across railroad crossing DOT#432662;

  2. Placing any closing or removal notice on any stop signs or railroad crossing sings at the crossing that is the subject matter of this suit.

33. Plaintiffs' requests the Court, after trial on the merits, to grant the following permanent injunction:

  a. Make the Temporary Injunction permanent.

## VIII. ATTORNEYS' FEES

34. It was necessary for Plaintiffs to secure the services of Gilberto Hinojosa and Allena Cano, licensed attorneys, to prepare and prosecute this suit and a judgment for attorneys' fees, expenses, and costs through trial and appeal should be granted against Union Pacific, Defendant, and in favor of Plaintiffs for the use and benefit of Plaintiffs' attorneys and be ordered paid directly to Plaintiffs' attorney, who may enforce the judgment in the attorneys' own

names. Plaintiffs' requests post-judgment interest as allowed by law.

### IX. PRAYER

FOR THESE REASONS, Plaintiffs prays for the Court to render judgment for Plaintiffs and award the requested declaratory and temporary and permanent injunctive relief, reasonable attorneys' fees, and any other relief, in law or in equity to which Plaintiffs may be entitled.

Plaintiffs pray that the Court immediately grant a temporary restraining order enjoining Union Pacific, in conformity with the allegations of this pleading, from the acts set forth above, and Plaintiffs pray that, after notice and hearing, this temporary restraining order be made a permanent injunction enjoining Union Pacific, in conformity with the allegations of this pleading, from the acts set forth above.

Plaintiffs pray for attorneys' fees, expenses, and costs as requested above.

Plaintiffs pray for general relief.

Respectfully submitted,

Judge Gilberto Hinojosa
**Law Office of Gilberto Hinojosa & Associates, P.C.**
622 East St. Charles
Brownsville, Texas 78520
Tel: (956) 544-4218
Fax: (956) 544-1335

By: _____
Gilberto Hinojosa
State Bar No. 09701100
Attorney for Plaintiffs

**Law Office of Allena L. Cano**
9101 N. 23rd
McAllen, Texas 78504
Tel: (956-566-3670)
Fax: (956) 631-8992

By: _/s/ Allena L. Cano by permission_
Allena L. Cano
State Bar No. 24036319
Attorney for Plaintiffs

DC _____

| | | |
|---|---|---|
| MAGIC VALLEY CONCRETE, RIO VALLEY PIPE, UPPER VALLEY MATERIALS, ALL VALLEY TRUCKING, MAGIC VALLEY MANAGEMENT SERVICE, jointly d/b/a "CAPA", AND RUFINO GARZA AND RAMIRO J. FLORES, INDIVIDUALLY PLAINTIFFS | § § § § § § § § | IN THE DISTRICT COURT |
| V. | § § | |
| UNION PACIFIC RAILROAD CO., DEFENDANT | § § | CAMERON COUNTY, TEXAS |

STATE OF TEXAS
HIDALGO COUNTY

## VERIFICATION

Before me, the undersigned notary, on this day personally appeared Rufino Garza, who, after being duly sworn, stated under oath that he is the duly authorized agent for the Plaintiffs in this action; and Rufino Garza testifies:

"My name is Rufino Garza. I have read the PLAINTIFFS' ORIGINAL PETITION, REQUEST FOR DECLARATORY RELIEF, AND REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF. The facts stated in it are within my personal knowledge and are true an correct."

_____
Rufino Garza

SWORN TO and SUBSCRIBED before me by Rufino Garza on 26th November 2013.



ERNESTO SAENZ
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 12-12-2015

_____
Notary Public in and for the State of Texas

DC _____

| | | |
|---|---|---|
| MAGIC VALLEY CONCRETE, RIO VALLEY PIPE, UPPER VALLEY MATERIALS, ALL VALLEY TRUCKING, MAGIC VALLEY MANAGEMENT SERVICE , jointly d/b/a "CAPA", AND RUFINO GARZA AND RAMIRO J. FLORES, INDIVIDUALLY | § § § § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS | § | |
| V. | § § | |
| UNION PACIFIC RAILROAD CO., DEFENDANT | § § | CAMERON COUNTY, TEXAS |

## AFFIDAVIT OF SAUL R. MUNOZ

STATE OF TEXAS
COUNTY OF HIDALGO

    On this day, Saul R. Munoz, appeared before me, the undersigned notary public, and after I administered an oath to him, upon his oath, he said:

    "My name is Saul R. Munoz. I am more than 21 years of age and capable of making this affidavit.

1.    I am currently the operations chief for CAPA.

2.    I am a retired TxDOT employee with 25 years of experience designing and building State Highways, County Roads and City Streets. In the 25 years of working, 20 years were in construction and 5 were in design. I retired the as District Construction Engineer, in charge of all of the construction in the Pharr District. The Pharr District includes Brooks, Cameron, Hidalgo, Jim Hogg, Kenedy, Starr, Willacy and Zapata Counties.

3.    Since I was in charge of many major roadway projects, several project improvements included railroad crossings. The crossings were coordinated though TxDOT and the Railroad Owners to include cross bucks, stop signs, signals and cross arms, planking and advanced train detection systems. The improvements for to provide a safe method of crossing railroad tracks include the following:

    A: Cross Buck and Stop Sign : We have this now at the crossing in front of our business.

B: Flashing lights, cross buck and stop sign. This is the least expensive safety device, but would work given the fact that it is not a public crossing and the crossings are limited to trucks that only cross during limited times during the day.

C: Flashing Lights, Drop Cross Arms, and Lights. This is more expensive and uses advanced warning. Although it is not necessary, we told Union Pacific that if necessary, we would pay for the installation and maintenance of this type safety device.

D: Planking, Lights, Drop Cross Arms and Lights. This is the most expensive safety device and requires that we place planking. Under the circumstances it is not needed for us.

4. Of the conditions listed above from B. – D. would be an improvement to what we have now and would be allowed for any Railroad Crossing for a safe crossing involving a Train. Any of these can be installed and we have offered to pay for the installation and maintenance of the safety device. Union Pacific attorneys refused to accept our offer to pay for the installation of a safety device and instead said that they were going to close off the crossing in front of our business."

Saul R. Munoz, P.E.
CAPA Chief of Operations

SWORN TO and SUBSCRIBED before me by Saul R. Munoz on the 26th day of November 2013.

ERNESTO SAENZ
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP.12-12-2015

Notary Public for the State of Texas





2



3



4